[650 NYS2d 263]

In the Matter of JOHN J. CONNOLLY, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, November 18, 1996

## APPEARANCES OF COUNSEL

*Gary L. Casella,* White Plains *(Forrest Strauss* of counsel), for petitioner.

*John J. Connolly,* Goshen, respondent *pro se.*

## OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent was served with a petition and a supplemental petition containing a total of nine charges of professional misconduct against him. The Special Referee sustained eight of the charges against the respondent and dismissed Charge Four. The Grievance Committee now moves and the respondent cross-moves to confirm in part and disaffirm in part the report of the Special Referee.

Charge One alleged that the respondent neglected a legal matter entrusted to him in violation of Code of Professional Responsibility DR 6-101 (A) (3) (22 NYCRR 1200.30 [a] [3]) by failing to appear in court on the adjourned date of a litigated matter or to otherwise act, after having entered an appearance as the attorney of record and without having been discharged by his client, substituted by another attorney, or otherwise relieved by the court.

On or about January 29, 1993, Kathleen Schmidt filed a complaint against the respondent alleging that he had neglected the legal matter of *Schmidt v Stein.* In or about April 1992, the respondent represented Ms. Schmidt in the purchase of a home. She forwarded a $2,500 down payment to the seller's attorney to hold in escrow until the closing. When she was unable to obtain a mortgage, Ms. Schmidt asked the respondent to make efforts to recover the $2,500 down payment from the seller. Upon the seller's refusal to voluntarily return the down payment and the failure of subsequent negotiations, the respondent commenced an action for the return of the down payment in the Town Court of Wallkill, New York, on or about November 5, 1992. After the matter was adjourned for consideration of a settlement offer, the respondent informed the court that his client had engaged another attorney. In consequence of the respondent's failure to appear on the adjourned date, a default judgment was entered in favor of the seller. On or about November 24, 1992, the seller's attorney informed the respondent that he was releasing the down payment to his clients and advising the broker to return the binder to his office. The respondent failed to notify Ms. Schmidt of developments or to otherwise take reasonably practicable steps to avoid foreseeable prejudice to the rights of his client.

At no time during the aforesaid events was the respondent ever discharged by his client, by the court, or substituted out

of the litigated matter. The respondent knew or should have known that his failure to appear in the Schmidt lawsuit would constitute neglect of a legal matter entrusted to him to the prejudice of his client.

Charge Two alleged that the respondent withdrew from a litigated matter without having first obtained the permission of the court or his client and without having taken steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of the client, in violation of Code of Professional Responsibility DR 2-110 (A) (2) (22 NYCRR 1200.15 [a] [2]), and/or engaging in conduct that adversely reflects on his fitness to practice law.

On or about November 19, 1992, and at all times referred to in Charge One, the respondent knew or should have known that he needed to either move the court to be relieved from the Schmidt case or take steps to the extent reasonably practicable to avoid foreseeable prejudice to the rights of his client. Such steps include giving notice to the client, allowing time for the employment of other counsel, delivering to the client all papers and property to which the client is entitled and complying with applicable laws and rules.

Charge Three alleged that the respondent has engaged in conduct prejudicial to the administration of justice and/or conduct that adversely reflects on his fitness to practice law, by failing to produce his escrow records in response to a notice or subpoena duces tecum issued in connection with an investigation by an appropriate Grievance Committee.

On or about September 9, 1994, the respondent agreed, at the Grievance Committee's request, to testify under oath on October 21, 1994 regarding three complaints against him which were under investigation. On or about September 13, 1994, the Grievance Committee forwarded to the respondent a request that he produce the bank records for his Bank of New York escrow account, covering the period January 1, 1991 through May 31, 1991. On October 6, 1994, the respondent replied, stating that the request constituted an unfair burden upon him. On or about October 12, 1994, the Grievance Committee again requested that the respondent produce the escrow records or explain his inability to do so on or before October 21, 1994. The Grievance Committee also reminded the respondent of his obligation to maintain such records pursuant to Code of Professional Responsibility DR 9-102 (22 NYCRR 1200.46). On or about October 20, 1994, the respondent unsuccessfully sought Grievance Counsel's recusal from this matter.

At approximately 9:10 A.M. on or about October 21, 1994, the respondent's father/partner, William J. Connolly, telephoned Grievance Counsel less than 90 minutes before the respondent was scheduled to appear to state that the respondent would be unavailable that day. Although no excuse was offered and Grievance Counsel refused to consent to this last-minute request for an adjournment, the respondent failed to appear at the appointed hour.

On or about November 3, 1994, the respondent was personally served with subpoenas issued by this Court, compelling his appearance on November 14, 1994 with the previously requested records. At the respondent's request, Grievance Counsel agreed to hold the subpoenas in abeyance until December 2, 1994. On or about November 21, 1994, the respondent requested that the subpoenas be withdrawn. By letter dated November 28, 1994, the respondent's request that the subpoenas be withdrawn was denied and the respondent was reminded of the proscriptions of Code of Professional Responsibility DR 9-102 (H) and (I) (22 NYCRR 1200.46 [h], [i]). On or about December 1, 1994, William J. Connolly informed Grievance Counsel that the respondent had been injured in a car accident and would be unable to appear on December 2, 1994. Grievance Counsel then requested further documentary proof of the respondent's accident and injuries and agreed to hold the subpoenas in abeyance until December 14, 1994 solely on the ground of the respondent's medical incapacity. On or about December 13, 1994, William J. Connolly informed Grievance Counsel by letter that the respondent was still suffering from injuries sustained in the accident and would be unable to appear on December 14. No medical data was provided other than William Connolly's representation that the respondent had consulted with a Dr. Robert Rakov, as well as with a nurse. Although no further adjournment was consented to, the respondent failed to either appear at the petitioner's offices or produce the subpoenaed records. Grievance Counsel thereupon requested proof of the respondent's accident, injuries, and treatment and advised the respondent that January 3, 1995 would be the final return date for the subpoenas issued by this Court. Grievance Counsel further advised the respondent that any further failure to comply with the subpoenas might result in his being cited for contempt and/or a motion for his immediate suspension.

On or about December 27, 1994, the Grievance Committee's investigator observed the respondent at his place of business in

apparent good health. The respondent informed the investigator that he had a scheduled court appearance on January 3, 1995, and that he intended to request another adjournment. Although no further adjournments were granted, the respondent failed to appear on January 3, 1995 at the appointed hour. On the afternoon of January 3, 1995, Grievance Counsel received an affirmation from the respondent indicating that he was appearing that day before the Honorable Joseph G. Owen with respect to an order to show cause. The respondent again requested an adjournment and a transfer of the proceeding to another judicial district. There is no indication that the respondent notified Justice Owen that the Appellate Division subpoena was returnable on January 3, 1995, or that he had requested an adjournment of the order to show cause.

Charge Five alleged that the respondent engaged in conduct prejudicial to the administration of justice and/or conduct adversely reflecting on his fitness to practice law by failing to cooperate with legitimate investigations of the Grievance Committee into the complaints referred to in Charges Three and Four in violation of Code of Professional Responsibility DR 1-102 (A) (5) and/or (8) (22 NYCRR 1200.3 [a] [5], [8]) and/or DR 9-102 (H) (22 NYCRR 1200.46 [h]).

Charge Six alleged that the respondent engaged in conduct prejudicial to the administration of justice and/or conduct that adversely reflects on his fitness to practice law, by failing to comply with subpoenas issued by this Court on October 24, 1994, based on the facts set forth in Charges Three and Four in violation of Code of Professional Responsibility DR 1-102 (A) (5) and (8) (22 NYCRR 1200.3 [a] [5], [8]) and/or DR 9-102 (H) (22 NYCRR 1200.46 [h]).

Charge Seven alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation and/or conduct that adversely reflects on his fitness to practice law in violation of Code of Professional Responsibility DR 1-102 (A) (4) and/or (8) (22 NYCRR 1200.3 [a] [4], [8]), by captioning a bank account as an "escrow" account to prevent its invasion by potential creditors when it was not claimed to be an account containing funds belonging to a client or other third party.

Commencing in or before November 1992 and continuously through approximately April 9, 1993, the respondent and his father/partner maintained an account with the Orange County Trust, captioned "Connolly and Connolly—Escrow Account". Both were signatories on this account during that time period.

During that period, the subject account did not contain client funds, was not an escrow account, and was, instead, used as a partnership operating account for Connolly and Connolly. The account was labeled as an escrow account during the aforesaid time period in order to prevent any banks from invading it to satisfy other debts. At all times referred to, the respondent knew or should have known that by falsely labeling a law firm operating account as an "escrow" account, he was engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation and that such conduct would adversely reflect upon his fitness to practice law.

Charge Eight alleged that the respondent failed to properly maintain the records of special bank accounts, as defined in Code of Professional Responsibility DR 9-102 (B) (1) (22 NYCRR 1200.46 [b] [1]) and/or any other bank accounts which record the operations of his practice of law, in violation of Code of Professional Responsibility DR 9-102 (D) (22 NYCRR 1200.46 [d]), and/or of engaging in conduct that adversely reflects upon his fitness to practice law, by discarding cancelled checks, bank statements, overdraft notices, and other records for such accounts less than seven years after the events which they record.

In or about August 1993 and thereafter, numerous bank records were recovered by a third party from items discarded by the respondent's father/partner. These records included, *inter alia,* original cancelled checks negotiated in or about 1992, drawn on the Bank of New York, account number 0285211090, in the name of "John J. Connolly, Esq.—Escrow Account"; original notices of overdrafts of funds and bank statements for the Orange County Trust "Escrow" account in the firm name; specified checks and notices of insufficient funds.

At all times relevant hereto, the respondent knew or should have known that he is required, pursuant to Code of Professional Responsibility DR 9-102 (D) (8) (22 NYCRR 1200.46 [d] [8]), to maintain "[a]ll checkbooks and checkstubs, bank statements, prenumbered cancelled checks and duplicate deposit slips with respect to the special accounts specified in DR 9-102 (B) * * * and any other bank account which records the operations of the lawyer's practice of law".

Charge Nine, which is contained in the supplemental petition, dated March 27, 1995, alleged that the respondent converted funds he was required to hold in his escrow account and engaged in conduct that adversely reflects upon his fitness to practice law by failing to maintain in escrow a $3,900

contract deposit on behalf of a client and the prospective purchaser of that client's house.

After being retained by Victor and/or Linda Roussos to handle the contract and closing on the sale of their home to the Hoskings, the respondent was entrusted by the Hoskings with a $3,900 down payment, which he was to hold in escrow until the sale closed. The contract was signed and the down payment was tendered on or about July 31, 1991. That deposit was credited to the respondent's escrow account at the Bank of New York on or about August 8, 1991. The Roussoses demanded release of the down payment to them when the Hoskings failed to complete the purchase more than a year later. After repeated demands, the Roussoses and the respondent agreed that the respondent would retain $700 of the $3,900 to cover outstanding fees he was owed for unrelated legal work he had completed at Victor Roussos' behest, and would forward the balance to Victor Roussos and/or his wife.

The respondent issued check number 2741 from his Bank of New York account, dated December 1, 1992, in the amount of $3,200. This check, which was payable to the Roussoses, was dated December 1 and cleared December 7, 1992. On approximately five occasions between August 8, 1991 and December 7, 1992, the over-all balance in the respondent's account fell below the $3,900 he was required to maintain. During that time, the balance of funds in the respondent's escrow account fell to a negative figure on at least one occasion. At all times between the Hoskings' tender of the down payment, on or about July 31, 1991, and the respondent's disbursement of the $3,200 to the Roussoses, on or about December 1, 1992, the respondent knew or should have known that he was obligated to maintain the full $3,900 in the escrow account.

Based on the evidence adduced, we find that the Special Referee properly sustained Charges One, Two, and Three, and charges Five through Nine, and that he properly failed to sustain Charge Four. The motion and cross motion are granted to that extent.

In determining an appropriate measure of discipline to impose, we have considered the respondent's testimony and conduct which evinced a failure to understand his responsibilities as an escrowee and a fiduciary as well as his prior disciplinary history. The respondent was the subject of a Letter of Admonition, dated June 11, 1992, based on his engaging in conduct prejudicial to the administration of justice. The Letter of Admonition emanated from the respondent's signing and no-

tarizing two satisfactions of mortgage which were presented to him by Melvin Cohen, a social and business acquaintance. The respondent failed to complete the acknowledgment clauses. It was subsequently discovered that Mr. Cohen had forged the documents and was a principal in the two mortgagors listed in the satisfactions.

Under the totality of circumstances, we find that the respondent is guilty of professional misconduct, in particular, his conversion of escrow funds, which warrants his disbarment.

MANGANO, P. J., BRACKEN, ROSENBLATT, MILLER and KRAUSMAN, JJ., concur.

Ordered that the petitioner's motion and the respondent's cross motion to confirm in part and disaffirm in part the report of the Special Referee are granted to the extent that Charges One, Two, Three, and Charges Five through Nine are sustained and the motion and cross motion are otherwise denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, John J. Connolly, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, John J. Connolly is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.